Russell S. Thompson, IV (Cal. Bar No. 325944)
Elliot Rosenberger (Cal. Bar No. 298837)
Thompson Consumer Law Group, PC
5235 E. Southern Ave., D106-618
Mesa, AZ 85206
Telephone: (602) 388-8898
Facsimile: (866) 317-2674
rthompson@ThompsonConsumerLaw.com
erosenberger@ThompsonConsumerLaw.com

Jesse S. Johnson*
Florida Bar No. 0069154
Greenwald Davidson Radbil PLLC
7601 N. Federal Hwy., Suite A-230
Boca Raton, FL 33487
Telephone: 561-826-5477
Fax: 561-961-5684
jjohnson@gdrlawfirm.com

*Counsel for Plaintiff and the proposed class*

\* To seek admission *pro hac vice*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jake L. Kemp, on behalf of himself and others similarly situated, | ) Case No. <br> ) <br> ) |
| Plaintiff, | ) **CLASS ACTION COMPLAINT** <br> ) |
| vs. | ) **JURY TRIAL DEMANDED** <br> ) |
| Low Cost Interlock, Inc., | ) <br> ) |
| Defendant. | ) <br> ) |

## Nature of Action

1. Pursuant to 15 U.S.C. § 1667d(c) and 28 U.S.C. § 1331, this Court has jurisdiction over this class action under the Consumer Leasing Act ("CLA"), 15 U.S.C. § 1667, and its implementing regulations, 12 C.F.R. pt. 1013 *et seq.* ("Regulation M").

2. Jake L. Kemp ("Plaintiff") alleges that Low Cost Interlock, Inc. ("Defendant") violated the CLA and Regulation M by entirely omitting or otherwise hiding many important financial terms in its ignition interlock lease agreements with consumers.

3. "Congress enacted the CLA as an amendment to the [Truth in Lending Act ("TILA")] and [thereby] extended the TILA's 'credit disclosure requirements to consumer leases.'" *Clement v. Am. Honda Fin. Corp.*, 145 F. Supp. 2d 206, 209 (D. Conn. 2001) (quoting *Turner v. Gen. Motors Acceptance Corp.*, 180 F.3d 451, 454 (2d Cir. 1999)).

4. TILA—and, by extension, the CLA—was put in place to protect consumers from misinformation in credit and lease transactions.

5. Congress recognized and sought to remedy the information imbalance in such transactions, particularly for inexperienced or uninformed consumers lacking the financial shrewdness of those companies responsible for extending them credit or leasing them products—like Defendant here.

6. Defendant's lease agreements with Plaintiff and all putative class members are defective for the same reasons: they do not provide several financial disclosures required by the CLA and Regulation M, in a manner that satisfies the statute and its regulations.

## Parties

7. Plaintiff is a natural person who, at all relevant times, resided in Maricopa County, Arizona.

8. Plaintiff is a "lessee" as defined under the CLA, 15 U.S.C. § 1667(2).

9. Defendant is a for-profit corporation offering leasing services throughout the state of Arizona and elsewhere throughout the country, and which maintains offices in San Bernardino County, California.

10. Defendant "offer[s] the easiest, cheapest, fastest, most reliable interlock device for your car. Period."[1]

11. According to Defendant's website:

> Low Cost Interlock is the leading provider of ignition interlock systems throughout Arizona, featuring ignition interlock installation locations in dozens of cities throughout the state. We are dedicated to making the process of obtaining and installing a car breathalyzer as easy and convenient as possible. In a time like this where you might be feeling overwhelmed, we can help you through every step of the process, giving you guidance and answering any questions that you may have.[2]

12. Defendant leases its ignition interlock devices to drivers throughout Arizona using "consumer leases" as defined under the CLA, 15 U.S.C. § 1667(1).

13. Defendant accordingly is a "lessor" as defined by 15 U.S.C. § 1667(3).

14. Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b), as Defendant maintains offices and transacts business in this district, and as the lease agreement at issue between Plaintiff and Defendant calls for venue to lie in San Bernardino County, California.

**Background of the CLA**

15. At its core, the CLA was enacted to require disclosure of important terms—particularly financial terms—to protect consumers entering into consumer lease agreements.

---

[1] https://www.lowcostinterlock.com/ (last visited August 2, 2019).

[2] https://www.lowcostinterlock.com/arizona/ (last visited August 2, 2019).

16. "Passed by Congress as an amendment to the Truth In Lending Act [], the CLA purports 'to assure a meaningful disclosure' of personal property lease terms to 'enable the lessee to compare more readily the various lease terms available to him [and] limit balloon payments in consumer leasing.'" *Gaydos v. Huntington Nat. Bank*, 941 F. Supp. 669, 672 (N.D. Ohio 1996) (quoting 15 U.S.C. § 1601(b)).

17. That is,

> [b]ecause lease financing had become recognized as an alternative to credit financing and installment sales contracts, Congress also intended CLA disclosure requirements to "enable comparison of lease terms with credit terms where appropriate." *Id.* The CLA thus requires lessors of personal property subject to its provisions to make specified disclosures when a lease is entered into. *See* 15 U.S.C. § 1667a (consumer lease disclosures).

*Turner*, 180 F.3d at 454.

18. Accordingly, TILA's "strict liability standard attaches to violations of CLA disclosure requirements as well." *Gaydos*, 941 F. Supp. at 672.

19. Also important, "TILA reflects a transition in congressional policy from a philosophy of 'Let the buyer beware' to one of 'Let the seller disclose.'" *Layell v. Home Loan & Inv. Bank, F.S.B.*, 244 B.R. 345, 350 (E.D. Va. 1999) (quoting *Mourning v. Family Publications Serv., Inc.*, 411 U.S. 356, 377 (1973)).

20. And given the CLA's enactment within the same statutory structure, this philosophy applies with equal force to the CLA and Regulation M.

### The CLA's Disclosure Requirements

21. The CLA and Regulation M require several types of disclosures in a consumer lease, all of which must be made in a clear and conspicuous manner.

22. As well, certain of the disclosures required by Regulation M must be made in a "segregated" manner, separate and apart from the remainder of the lease terms:

> The following disclosures shall be segregated from other information and shall contain only directly related information: §§ 1013.4(b) through (f), (g)(2), (h)(3), (i)(1), (j), and (m)(1). The headings, content, and format for the disclosures referred to in this paragraph (a)(2) shall be provided in a manner substantially similar to the applicable model form in appendix A of this part.

12 C.F.R. pt. 1013.3(a)(2).

23. Those disclosures that must be "segregated from other information" include:

- The amount due at lease signing or delivery;

- The number, amount, and due dates or periods of payments scheduled under the lease, and the total amount of the periodic payments;

- The total amount of other charges payable to the lessor, itemized by type and amount, that are not included in the periodic payments;

- The total of payments, with a description such as "the amount you will have paid by the end of the lease";

- A statement regarding whether the lessee has the option to purchase the leased property, and, if at the end of the lease term, the purchase price; and

- A statement that the lessee should refer to the remainder of the lease documents for additional information on early termination, purchase options and maintenance responsibilities, warranties, late and default charges, insurance, and any security interests, if applicable.

12 C.F.R. pt. 1013.4.

24. Per 12 C.F.R. pts. 1013.3 and 1013.4, these segregated disclosures must "be provided in a manner substantially similar to the applicable model form in appendix A" of Regulation M.

25. In other words, if a lessor chooses *not* to use the model form attached to the implementing regulations (and attached here as Exhibit A), the requisite

"segregated" disclosures must be given in a manner at least "substantially similar to" to that form.

26. These requirements for "segregated" disclosures date back to 1996, when the Board of Governors of the Federal Reserve System ("Board") conducted a review of Regulation M to ensure continued and adequate protection of consumers.[3]

27. Among the Board's observations in 1996: "The major revision to this section [of Regulation M] . . . is the requirement to segregate certain disclosures from other information. Clear and conspicuous lease disclosures must be given prior to consummation of a lease on a dated written statement that identifies the lessor and lessee." 61 FR 52246-01, 52249 (Oct. 7, 1996).

28. The Board amended paragraph 3(a)(1) of Regulation M [12 C.F.R. pt. 1013.3(a)(1)] as follows:

> Former §§ 213.4(a)(1) and 4(a)(2) required that all disclosures be made together on a separate statement or in the lease contract "above the place for the lessee's signature." The Board has deleted this requirement along with the meaningful sequence, same-page, and type-size disclosure requirements, replacing them with the requirement that disclosures be segregated. Most commenters generally supported the proposed segregation requirement, although some commenters opposed the deletion of the other requirements. They believed that the signature requirement ensured that lessors would give disclosures before the consumer becomes obligated on the lease and discouraged lessors from putting important information on the back of a lease document. The Board believes that a segregation requirement and the clear and conspicuous standard provide the same level of protection as the previous rules.
>
> The segregated disclosures and other CLA disclosures must be given to a consumer at the same time. Lessors must continue to ensure that

---

[3]  The Board remained tasked with oversight of the CLA and Regulation M until the creation of the Consumer Financial Protection Bureau ("CFPB") in 2011, at which time the CFPB assumed the Board's role with respect to such oversight.

> the disclosures are given to lessees before the lessee becomes obligated on the lease transaction. For example, by placing disclosures that are included in the lease documents above the lessee's signature, or by including instructions alerting a lessee to read the disclosures prior to signing the lease.
>
> Nonsegregated disclosures need not all be on the same page, but should be presented in a way that does not obscure the relationship of the terms to each other.

*Id.*

29. To that end, the Board also amended paragraph 3(a)(2) [12 C.F.R. pt. 1013.3(a)(2)] as follows:

> Most commenters—representing both the industry and consumer groups—generally supported some form of segregation of leasing disclosures**. Many commenters believed that consumers would be more likely to read and understand the disclosures if key items were segregated from other disclosures and contract terms.** Pursuant to its authority under section 105(a) of the TILA, **the Board has adopted the requirement that certain consumer leasing disclosures be segregated from other required disclosures and from general contract terms to assure clear, conspicuous, and meaningful disclosure of lease terms.**
>
> Some commenters, including trade groups that represent a large portion of the motor vehicle leasing industry, suggested that the more important disclosures be further highlighted in a manner similar to the Board's Regulation Z. **The Board believes that the segregation requirement and the requirement that disclosures be in a form substantially similar to the applicable model form in appendix A adequately focuses the consumer's attention on key information.**
>
> Lessors may provide the segregated disclosures on a separate document or may include them in their lease contracts, apart from other information. The general content, format, and headings for these disclosures should be substantially similar to those contained in the model forms in appendix A. Lessors may continue to provide the remaining disclosures required by Regulation M and the CLA in a nonsegregated format.

> The model forms in Appendix A for open-end leases, closed-end leases, and furniture leases have been revised.

*Id.* (emphasis added).

## Factual Allegations

30. In June of 2018, Defendant installed one of its ignition interlock devices in Plaintiff's vehicle.

31. At the same time, Plaintiff executed a Lease Agreement, Service Agreement, and Credit Card Authorization Form (the "Agreement") with Defendant in which he is the lessee, Defendant is the lessor, and Defendant's ignition interlock device is the personal property subject to the lease.

32. A true and correct copy of the form of the agreement Plaintiff signed is attached as Exhibit B. Upon information and belief, the signed Agreement is in the possession of Defendant.

33. Plaintiff leased the ignition interlock device for personal, family or household purposes—namely, for use in his personal vehicle.

34. Plaintiff's Agreement was to last, and did last, for 12 months, after which—in June of 2019—Defendant removed its ignition interlock device from Plaintiff's vehicle.

35. At the very bottom of the Agreement's first page, in its own black box separated from the remainder of the text, Plaintiff's Agreement lists a "Schedule of Fees" that includes:

- Monthly Lease Payment $59.95 (plus tax)
- Insurance $8.00/month
- Calibration $12.50
- Data Download $12.50
- Late Payment $25.00
- Missed Appointment $35.00
- Service Call Hourly Rate $60.00 plus mileage @ $0.44/mile

- Removal Fee $75.00
- Bypass Fee $200.00
- Cord Fee $100.00
- Override Fee $75.00
- Mobile Fee (quoted upon request)

Ex. B at 1.

36. The "Schedule of Fees" further indicates that "[a]ll fees [are] subject to applicable state and federal taxes." *Id.*

37. On the second page, under "LESSEE'S OBLIGATIONS," the Agreement mandates: "During the term of this Lease, Lessee authorizes regularly scheduled charges to the Account that is on file with Lessor, every 30 days beginning at the start of the lease. Lessee will be charged each billing period for the total amount due for that period." *Id.* at 2.

38. Plaintiff paid Defendant approximately $25 in upfront costs at the time he signed his lease Agreement, followed by regular monthly payments of approximately $85 each, for 12 months.

39. Upon information and good-faith belief, the approximately $85 monthly payments Plaintiff made to Defendant included the base $59.95 "Monthly Lease Payment," plus the $12.50 "Calibration" fee, plus the $12.50 "Data Download" fee.

40. During the course of his lease, Plaintiff also paid several $25 late fees, as well as a $75 removal fee at the conclusion of the lease when Defendant removed the device from his vehicle.

41. Accordingly, in all, between June of 2018 and June of 2019, Plaintiff paid Defendant more than $1,100 in connection with the Agreement.

## CLASS ALLEGATIONS

42. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(b)(3) on behalf of a class defined as:

Class Action Complaint - 8

> All persons throughout California and Arizona (1) to whom Low Cost Interlock, Inc. leased an ignition interlock device for personal, family, or household purposes, (2) with an initial lease term greater than four months, (3) for which the lease is currently in force or was terminated on or after August 2, 2018, and (4) and in connection with which Low Cost Interlock, Inc. failed to provide, prior to the consummation of the lease, segregated written disclosures informing the lessee of (a) the amount due at lease signing or delivery; (b) the payment schedule and total amount of periodic payments; (c) the total amount of other charges payable to Low Cost Interlock, Inc., itemized by type and amount, which are not included in the periodic payments; (d) the total of payments owed under the lease; (e) a statement of whether or not the lessee has the option to purchase the leased property, and, if at the end of the lease term, the applicable purchase price; or (f) a statement referencing other requisite, non-segregated disclosures.

43. Excluded from the class is Defendant, its officers and directors, and any entity in which Defendant has or had a controlling interest.

44. The proposed class satisfies Rule 23(a)(1) because, upon information and belief, it is so numerous that joinder of all members is impracticable.

45. The exact number of class members is unknown to Plaintiff at this time and can only be determined through appropriate discovery.

46. The proposed class is ascertainable because it is defined by reference to objective criteria.

47. In addition, the proposed class is identifiable in that, upon information and belief, the names and addresses of all members of the proposed class can be identified in business records maintained by Defendant.

48. The proposed class satisfies Rules 23(a)(2) and (3) because Plaintiff's claims are typical of the claims of the members of the class.

49. To be sure, Plaintiff's claims and those of the members of the class originate from the same standardized lease agreement utilized by Defendant, and Plaintiff possesses the same interests and has suffered the same injuries as each member of the proposed class.

50. Plaintiff satisfies Rule 23(a)(4) because he will fairly and adequately protect the interests of the members of the class and has retained counsel experienced and competent in class action litigation.

51. Plaintiff has no interests that are contrary to or irrevocably in conflict with the members of the class that he seeks to represent.

52. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since, upon information and belief, joinder of all members is impracticable.

53. Furthermore, as the damages suffered by individual members of the class may be relatively small, the expense and burden of individual litigation make it impracticable for the members of the class to individually redress the wrongs done to them.

54. There will be no extraordinary difficulty in the management of this action as a class action.

55. Issues of law and fact common to the members of the class predominate over any questions that may affect only individual members, in that Defendant has acted on grounds generally applicable to the class.

56. Among the issues of law and fact common to the class:
   a. Defendant's violations of the CLA as alleged herein;
   b. Whether Defendant is a lessor within the meaning of the CLA;
   c. Defendant's use of a form Lease Agreement, Service Agreement, and Credit Card Authorization Form with all of its lessees;
   d. Defendant's practice of providing Lease Agreement, Service Agreement, and Credit Card Authorization Forms without adequate and segregated disclosures as required by the CLA;
   e. the availability of statutory penalties; and
   f. the availability of attorneys' fees and costs.

**Count I: Violations of 15 U.S.C. § 1667a and 12 C.F.R. pt. 1013.4**

57. Plaintiff repeats and re-alleges the factual allegations contained in paragraphs 1 through 56.

58. The CLA at 15 U.S.C. § 1667a requires in pertinent part that "[e]ach lessor shall give a lessee prior to the consummation of the lease a dated written statement on which the lessor and lessee are identified setting out accurately and in a clear and conspicuous manner the following information with respect to that lease, as applicable:"

> (1) A brief description or identification of the leased property;
>
> (2) The amount of any payment by the lessee required at the inception of the lease;
>
> (3) The amount paid or payable by the lessee for official fees, registration, certificate of title, or license fees or taxes;
>
> (4) The amount of other charges payable by the lessee not included in the periodic payments, a description of the charges and that the lessee shall be liable for the differential, if any, between the anticipated fair market value of the leased property and its appraised actual value at the termination of the lease, if the lessee has such liability;
>
> * * *
>
> (9) The number, amount, and due dates or periods of payments under the lease and the total amount of such periodic payments

59. Regulation M further demands that certain disclosures be made in a "segregated" manner separate and apart from all other information contained in a consumer lease:

> The following disclosures shall be segregated from other information and shall contain only directly related information: §§ 1013.4(b) through (f), (g)(2), (h)(3), (i)(1), (j), and (m)(1). The headings, content, and format for the disclosures referred to in this paragraph (a)(2) shall be provided in a manner substantially similar to the applicable model form in appendix A of this part.

12 C.F.R. pt. 1013.3(a)(2).

60. Among those disclosures specifically required to be "segregated":

**(b) Amount due at lease signing or delivery.** The total amount to be paid prior to or at consummation or by delivery, if delivery occurs after consummation, using the term "amount due at lease signing or delivery." The lessor shall itemize each component by type and amount, including any refundable security deposit, advance monthly or other periodic payment, and capitalized cost reduction; and in motor vehicle leases, shall itemize how the amount due will be paid, by type and amount, including any net trade-in allowance, rebates, noncash credits, and cash payments in a format substantially similar to the model forms in appendix A of this part.

**(c) Payment schedule and total amount of periodic payments.** The number, amount, and due dates or periods of payments scheduled under the lease, and the total amount of the periodic payments.

**(d) Other charges.** The total amount of other charges payable to the lessor, itemized by type and amount, that are not included in the periodic payments. Such charges include the amount of any liability the lease imposes upon the lessee at the end of the lease term; the potential difference between the residual and realized values referred to in paragraph (k) of this section is excluded.

**(e) Total of payments.** The total of payments, with a description such as "the amount you will have paid by the end of the lease." This amount is the sum of the amount due at lease signing (less any refundable amounts), the total amount of periodic payments (less any portion of the periodic payment paid at lease signing), and other charges under paragraphs (b), (c), and (d) of this section. In an open-end lease, a description such as "you will owe an additional amount if the actual value of the vehicle is less than the residual value" shall accompany the disclosure.

* * *

**(i) Purchase option.** A statement of whether or not the lessee has the option to purchase the leased property, and:

>**(1) End of lease term.** If at the end of the lease term, the purchase price; and
>
>\* \* \*
>
>**(j) Statement referencing nonsegregated disclosures.** A statement that the lessee should refer to the lease documents for additional information on early termination, purchase options and maintenance responsibilities, warranties, late and default charges, insurance, and any security interests, if applicable.
>
>\* \* \*

12 C.F.R. pt. 1013.4.

61. Here, Defendant violated 15 U.S.C. § 1667a and 12 C.F.R. pt. 1013.4 in several respects by failing to provide, prior to the consummation of Plaintiff's Agreement, many disclosures—and many segregated disclosures—in the form and manner required by the CLA and Regulation M.

62. Specifically, regarding 15 U.S.C. § 1667a(2), the Agreement does not explain what amount Plaintiff is required to pay at the inception of the lease. *See generally* Ex. B.

63. As to 15 U.S.C. § 1667a(3), the Agreement does not explain what amounts of taxes are owed in Plaintiff's payments.

64. Instead, the Agreement simply lists "plus tax" in certain areas, and that "[a]ll fees [are] subject to applicable state and federal taxes" of unknown amounts. *See* Ex. B at 1.

65. As to 15 U.S.C. § 1667a(4), the Agreement does not adequately explain what "other charges" are payable aside from the monthly payments—which is particularly confusing since the Agreement does list several other types of charges, including a $12.50 "Calibration" fee, $12.50 "Data Download" fee, $200 "Bypass Fee," $100 "Cord Fee," and $75 "Override Fee." *See* Ex. B at 1.

66. As to 15 U.S.C. § 1667a(9), the Agreement is similarly deficient in failing to dictate the number, amount, and due dates of Plaintiff's required monthly

payments under the lease, as well as the total amount of such monthly payments owed. *See* Ex. B at 1.

67. Indeed, while the Agreement lists a "Monthly Lease Payment" of $59.95 (plus tax), it does not indicate that the $12.50 "Calibration" fee and $12.50 "Data Download" fee also would be charged monthly.

68. But, in practice, upon information and good-faith belief, Plaintiff paid both a $12.50 "Calibration" fee and a $12.50 "Data Download" fee in conjunction with each monthly payment, such that he paid $85 in total each month rather than only $59.95.

69. Turning to Regulation M's requirements for certain "segregated" disclosures, nowhere in the Agreement does Defendant list an "amount due at lease signing or delivery," nor does Defendant otherwise explain precisely what amount of money is due at the lease signing—let alone in a "segregated" manner—in contravention of 12 C.F.R. pt. 1013.4(b). *See generally* Ex. B.

70. Concerning 12 C.F.R. pt. 1013.4(c), Defendant's Agreement fails to explain the number, amount, and due dates or periods of payments, nor does it explain the total of periodic payments owed under the Agreement.

71. To be sure, while the Agreement lists a "Monthly Lease Payment" of "$59.95 (plus tax)," it does not then specify: (i) what amount of tax will be charged in addition to the $59.95 base payment; (ii) the number of monthly payments required; (iii) the due dates for the monthly payments; (iv) whether any of the "Calibration," "Data Download," or various other fees listed in the "Schedule of Fees" also will be charged monthly; or (v) the total of the monthly payments owed under the Agreement. *See* Ex. B at 1.

72. As to 12 C.F.R. pt. 1013.4(d), Defendant's Agreement similarly fails to adequately explain what "other charges" will be applied, and when.

73. More particularly, though the "Insurance" charge is indicated as "$8.00/month," Defendant does *not* indicate in the Agreement precisely when, or

how often, the $12.50 "Calibration" fee, or $12.50 "Data Download" fee, or $200 "Bypass Fee," or $100 "Cord Fee," or $75 "Override Fee" will be charged. *See* Ex. B at 1.

74. As to 12 C.F.R. pt. 1013.4(e), nowhere in the Agreement does Defendant disclose "the amount [Plaintiff] will have paid by the end of the lease," or something similar.

75. Defendant never tallies the total amount of money owed under the Agreement—to include any initial charges, monthly charges, and other one-time fees required of Plaintiff. *See generally* Ex. B.

76. As to 12 C.F.R. pt. 1013.4(i), Defendant does not explain in the Agreement whether Plaintiff has the option to purchase his ignition interlock device, and if at the conclusion of the lease, at what price. *See generally* Ex. B.

77. As to 12 C.F.R. pt. 1013.4(j), Defendant also fails to include in its Agreement a statement referring Plaintiff to the remainder of the lease documents for additional information on early termination, purchase options and maintenance responsibilities, warranties, late and default charges, insurance, and any security interests, if applicable. *See generally* Ex. B.

78. Indeed, such a statement is entirely missing from Defendant's Agreement, likely because Defendant makes little-to-no effort to segregate these necessary disclosures to begin with, as required by law.

79. The only semblance of *segregated* disclosures may be found in the "Schedule of Fees" printed at the very bottom of the first page. *See* Ex. B at 1.

80. However, while this "Schedule" is separated from the remainder of the text through its enclosure in thin black box, it is printed at the very bottom of the page and is otherwise buried by the voluminous, single-spaced text located above it. *See id.*

81. Further, to the extent any of the above-listed disclosures may be found scattered throughout the two pages of the Agreement, Defendant still failed to meet

its burden under the CLA and Regulation M because any such disclosures are *not* properly segregated from other information in the lease, and *not* provided in a manner substantially similar to the applicable model form (attached hereto as Exhibit A for reference).

82. In short, Defendant's Agreement with Plaintiff is precisely what the CLA and Regulation M were enacted to avoid—a confusing onslaught of lease terms that utterly fails to "focus[] the consumer's attention on key information," as the Board intended.

83. And Defendant's omissions are significant: at the time Plaintiff signed the Agreement, he was confused and unsure as to many of its terms, including (i) the total amount of money he owed under the lease; (ii) the exact amount of each periodic payment required by the lease; (iii) whether and to what extent other charges may be assessed beyond his periodic payments (such as the "Bypass Fee," "Cord Fee," or "Override Fee"); and (iv) whether he had the option to purchase the leased property at the conclusion of the lease (and if so, at what price).

84. Confusion of this magnitude is tantamount to deception on the part of Defendant; at signing, Plaintiff remained oblivious as to the true costs of the lease. *See McQuinn v. Bank of Am., N.A.*, 656 F. App'x 848, 849 (9th Cir. 2016); *Clement v. Am. Honda Fin. Corp.*, 145 F. Supp. 2d 206, 210 (D. Conn. 2001).

85. In other words, the confusion created by Defendant's lease agreement is exactly the type of harm that the Board sought to address in implementing, and later amending, Regulation M.

86. By virtue of its violations, Defendant is liable to Plaintiff under 15 U.S.C. § 1667d(a), 15 U.S.C. § 1640(a)(1), and 15 U.S.C. § 1640(a)(2)(A)(i) for all actual damages incurred and for statutory damages in the amount of 25% of the total amount of monthly payments due under the Agreement.

87. The harm suffered by Plaintiff is particularized in that the violative lease agreement was presented to him personally, regarded his personal obligations

in connection with the lease of an ignition interlock device, and failed to give him statutorily mandated disclosures to which he was entitled.

88. Likewise, the CLA's disclosure provisions

> serve[] to protect a consumer's concrete interest in "avoid[ing] the uninformed use of credit," a core object of the TILA. These procedures afford such protection by requiring a creditor to notify a consumer, at the time he opens a credit account, of how the consumer's own actions can affect his rights with respect to credit transactions. A consumer who is not given notice of *his* obligations is likely not to satisfy them and, thereby, unwittingly to lose the very credit rights that the law affords him. For that reason, a creditor's alleged violation of each notice requirement, by itself, gives rise to a "risk of real harm" to the consumer's concrete interest in the informed use of credit.

*Strubel v. Comenity Bank*, 842 F.3d 181, 190-91 (2d Cir. 2016) (emphasis in original).

89. No matter, that risk of real harm materialized here, as Plaintiff was unaware of, and oblivious to, the true costs associated with his lease of the ignition interlock device as a result of Defendant's inadequate disclosures.

90. Had Plaintiff known of the true costs involved, he may have pursued other alternatives for an ignition interlock device for his vehicle.

91. Further, the risk of real harm materialized in that Plaintiff paid Defendant a total of more than $1,100 over several months pursuant to the Agreement.

**WHEREFORE**, Plaintiff respectfully requests relief and judgment as follows:

A. Determining that this action is a proper class action and designating Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure;

B. Adjudging that Defendants violated 15 U.S.C. § 1667a and 12 C.F.R. pt. 1013.4 for its failure to provide Plaintiff or members of the proposed class

<sup></sup>

1 requisite disclosures and segregated disclosures concerning their leases of
2 Defendant's ignition interlock devices;
3      C.    Awarding Plaintiff and members of the proposed class actual damages
4 pursuant to 15 U.S.C. § 1667d(a) and 15 U.S.C. § 1640(a)(1), and/or statutory
5 damages pursuant to 15 U.S.C. § 1667d(a) and 15 U.S.C. § 1640(a)(2)(B);
6      D.    Awarding Plaintiff and members of the proposed class their
7 reasonable costs and attorneys' fees incurred in this action, including expert fees,
8 pursuant to 15 U.S.C. § 1640(a)(3) and Rule 23 of the Federal Rules of Civil
9 Procedure;
10     E.    Awarding Plaintiff and members of the proposed class any pre-
11 judgment and post-judgment interest as may be allowed under the law; and
12     F.    Awarding other and further relief as the Court may deem just and
13 proper.

## TRIAL BY JURY

Plaintiff is entitled to and hereby demands a trial by jury.

Respectfully submitted this 2nd day of August, 2019.

                          By:    /s/ Russell S. Thompson, IV
                                  Russell S. Thompson, IV