JS-5

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 19-1445 JGB (SHKx)** | Date | April 8, 2020 |
|---|---|---|---|
| Title | *Jake L. Kemp v. Low Cost Interlock, Inc.* | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**   Order DENYING Plaintiff's Motion for Preliminary Approval of Class Action Settlement (Dkt. No. 32) (IN CHAMBERS)

Before the Court is a Motion for Preliminary Approval of Class Action Settlement filed by Plaintiff Jake K. Kemp. ("Motion," Dkt. No. 32.) The Court finds the Motion appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. On April 3, 2020, the Court took the matter under submission. After considering the papers filed in support of and in opposition to the Motion, the Court DENIES the Motion.

## I.   BACKGROUND

On August 5, 2019, Plaintiff Jake L. Kemp filed a complaint against Defendant Low Cost Interlock, Inc. on behalf of himself and a putative class. ("Complaint," Dkt. No. 1.) The Complaint alleges a single cause of action for violation of 15 U.S.C. § 1667(a) ("CLA") and 12 C.R.F. 1012.4. (Id.)

On March 9, 2020, Plaintiff filed this Motion. (Motion.) In support of the Motion, Plaintiff also filed the Declaration of Jesse S. Johnson. ("Johnson Declaration," Dkt. No. 32-2.) Defendant did not oppose the Motion.

## II.   LEGAL STANDARD

Approval of a class action settlement requires certification of a settlement class. La Fleur v. Med. Mgmt. Int'l, Inc., 2014 WL 2967475, at *2–3 (C.D. Cal. June 25, 2014) (internal quotation marks omitted). A court may certify a class if the plaintiff demonstrates the class

meets the requirements of Federal Rules of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b).[1] See Fed. R. Civ. P. 23; see also Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996). Rule 23(a) contains four prerequisites to class certification: (1) the class must be so numerous that joinder is impracticable; (2) there must be questions of law or fact common to the class; (3) the claims of the class representative must be typical of the other class members; and (4) the representative parties must fairly and adequately protect the interests of the class. See Fed. R. Civ. P. 23(a). Rule 23(b) requires one of the following: (1) prosecuting the claims of class members separately would create a risk of inconsistent or prejudicial outcomes; (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive or declaratory relief benefitting the whole class is appropriate; or (3) common questions of law or fact predominate so that a class action is superior to another method of adjudication. Fed. R. Civ. P. 23(b).

Class action settlements must be approved by the court. See Fed. R. Civ. P. 23(e). At the preliminary approval stage, the Court "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." Id. "The settlement need only be potentially fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval." Acosta v. Trans Union, LLC, 243 F.R.D. 377, 386 (C.D. Cal. 2007) (emphasis in original). To determine whether a settlement agreement is potentially fair, a court considers the following factors: the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement. Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003).

### III. CONDITIONAL CERTIFICATION OF THE PROPOSED SETTLEMENT CLASS

The parties seek certification of the following proposed settlement class:

All persons (a) with an address in the United States (b) to whom Low Cost Interlock, Inc. leased an ignition interlock device for personal, family, or household purposes (c) with an initial lease term greater than four months (d) for which the lease was in force as of March 5, 2020 or was terminated on or after July 31, 2018.

(See "Agreement," Johnson Declaration, Exhibit 1 at 3.) The Court first addresses the Rule 23(a) requirements and then turns to the Rule 23(b) requirements.

//
//

---

[1] All references to "Rule" in this Order refer to the Federal Rules of Civil Procedure unless otherwise noted.

### A. Requirements of Rule 23(a)

#### 1. Numerosity

A class satisfies the prerequisite of numerosity if it is so large that joinder of all class members is impracticable. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). To be impracticable, joinder must be difficult or inconvenient, but need not be impossible. Keegan v. Am. Honda Motor Co., 284 F.R.D. 504, 522 (C.D. Cal. 2012). There is no numerical cutoff for sufficient numerosity. Id. However, 40 or more members will generally satisfy the numerosity requirement. Id. A plaintiff has the burden to establish that this requirement is satisfied. United Steel, Paper & Forestry, Rubber, Mfg. Energy v. Conoco Phillips Co., 593 F.3d 802, 806 (9th Cir. 2010). Defendant represented to Plaintiff that there are over 22,000 potential class members— far too many to individually join in a suit. (Motion at 2.) Accordingly, the Court concludes that the numerosity requirement is satisfied.

#### 2. Commonality

The commonality requirement is satisfied when plaintiffs assert claims that "depend upon a common contention . . . capable of classwide resolution—which means that a determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011).

Here, because the class members all signed materially similar lease agreements, there are questions of law and fact common to the settlement class, including (1) whether Defendant is a lessor within the scope of the CLA and (2) whether Defendant's form lease agreements violated the CLA's disclosure requirements. (Motion at 5.) If Defendant is liable to one member of the class for the allegedly lease agreements, it will necessarily be liable to all. Plaintiff, therefore, has established commonality.

#### 3. Typicality

"The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiff, and whether other class members have been injured by the same course of conduct." Wolin v. Jaguar Land Rover No. Am., 617 F.3d 1168, 1175 (9th Cir. 2010) (quoting Hanon, 976 F.2d at 508). Because typicality is a permissive standard, the claims of the named plaintiff need not be identical to those of the other class members. Hanlon, 150 F.3d at 1020. Here, Plaintiff argues his claims are typical of the class because he signed a lease agreement materially similar to the agreement signed by the remainder of the class. (Motion at 5–6.) Accordingly, the Court is satisfied that Plaintiff has met the typicality requirement.

//

### 4. Adequacy

In determining whether a proposed class representative will adequately protect the interests of the class, the court should ask whether the proposed class representative and her counsel have any conflicts of interest with any class member and whether the proposed class representative and her counsel will prosecute the action vigorously on behalf of the class. Johnson v. General Mills, Inc., 275 F.R.D. 282, 288 (C.D. Cal. 2011).

Plaintiff maintains there is no conflict of interest between himself and the proposed settlement class, as their interests in this litigation are aligned. (Motion at 6.) Plaintiff also represents he has litigated this case in good faith in the interest of the class. (Id.) Thus, Plaintiff does not have a conflict of interest with the class that might prevent him from vigorously representing the interests of class members who suffered the alleged violations. Finally, Class Counsel is experienced in litigating California wage and hour class actions. (See Johnson Declaration ¶¶ 6–15.) Accordingly, the Court concludes both the class representative and Class Counsel will adequality represent the interests of the proposed class.

## B. Requirements of Rule 23(b)

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 614 (1997). Here, Plaintiff alleges the Agreement satisfies the requirements of Rule 23(b)(3). (Motion at 11–13.)

Rule 23(b)(3) requires (1) issues common to the whole class to predominate over individual issues and (2) that a class action be a superior method of adjudication for the controversy. See Fed. R. Civ. P. 23(b)(3). As to predominance, the "inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Hanlon, 150 F.3d at 1022 (quoting Amchem, 521 U.S. at 623). "[T]he examination must rest on 'legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any settlement.'" Id. (same). A class should not be certified if the issues of the case require separate adjudication of each individual class member's claims. Id.

Here, adjudication by representation is warranted because questions common to the settlement class represent a significant aspect of the case and can be resolved for all members of the class in a single adjudication. Specifically, Plaintiff contends that common issues predominate because the claims of both Plaintiff and the proposed class stem from materially identical lease agreements. (Motion at 7–8.) The Court is satisfied that the common questions predominate.

A class action must also be superior to other methods of adjudication for resolving the controversy. Fed. R. Civ. P. 23(b)(3). To determine superiority, a court's inquiry is guided by the following pertinent factors:

      (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
      (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
      (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
      (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)–(D). However, "[confronted] with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." Amchem, 521 U.S. at 620.

      Here, Plaintiff notes proceeding as a class is an effective mechanism for vindicating the claims of class members because small, individual claims are uneconomic, as litigation costs would exceed any potential recovery. (Motion at 9.) Thus, individual actions are unlikely. Accordingly, the Court concludes the superiority requirement is satisfied.

## IV. SETTLEMENT AGREEMENT

### A. Settlement Class

The proposed Settlement class includes:

All persons (a) with an address in the United States (b) to whom Low Cost Interlock, Inc. leased an ignition interlock device for personal, family, or household purposes (c) with an initial lease term greater than four months (d) for which the lease was in force as of March 5, 2020 or was terminated on or after July 31, 2018.

(See Agreement at 3.)

### B. Financial Terms

      The Agreement provides for the creation of a settlement fund of $130,000. (Agreement ¶ 10.A.) The gross settlement amount is non-reversionary. (Id.) Any checks that remain uncashed 90 days after the date of mailing will be void. (Id.) Any residual funds will be paid to the Riverside Legal Aid as a *cy pres* recipient. (Id.)

#### 1. Settlement Class Members

      To be eligible to receive payment, each class member will need to submit a claim form. (Agreement ¶ 7.A.) Any class member who submits the claim form will receive a pro-rata share of the $130,000 settlement amount. (Id.)

### 2. Class Representative

The Agreement provides for a service award of $2,500 for Plaintiff Kemp to be paide by Defendant separate and apart from the settlement fund. (Agreement ¶ 10.B.)

### 3. Settlement Administration Costs

The Agreement indicates that a "[a] third-party class administrator jointly selected by and agreeable to the parties . . . will administer the settlement and notification of the settlement to the class members." (Agreement ¶ 6.) The associated costs and expenses for administration will be paid by the Defendant separate and apart from the settlement amount. (Id.)

### 4. Attorneys' Fees and Costs

Class Counsel will seek an award of attorneys' fees. (Agreement ¶10.D.) Attorneys' fees will be paid by Defendant separate and apart from the settlement award. (Id.) While Defendant will not object to awarding attorneys' fees, it may object to the amount of the award. (Id.)

## C. Injunctive Relief

Defendant "affirms that it will not longer use the same form of the ignition interlock lease agreement that Plaintiff signed." (Agreement ¶ 10.C.) However, the Agreement fails to specify what agreement Defendant will use going forward or whether it will abandon the terms that Plaintiff argues violate the CLA.

## D. Release

All settlement class members who do not request exclusion agree to release:

> any and all claims, demands, actions, potential actions, suits, and causes of action, losses, obligations, damages, matters and issues of any kind or nature whatsoever, and liabilities of any nature, including without limitation claims for costs, expenses, penalties, and attorneys fees, whether class, individual, or otherwise, that the Releasing Parties, or any of them, ever had, now has, or hereafter can, shall, or may have directly, representatively, derivatively or in any other capacity against any of the Released Parties, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, accrued or unaccrued, matured or unmatured, disclosed or undisclosed, apparent or unapparent, liquidated or unliquidated, or claims that have been, could have been, or in the future might be asserted in law or equity, on account of or arising out of or resulting from or in any way related to the form of a lease, sections 1667a or 1667b of the CLA, or the CLA s implementing regulations related to sections 1667a and 1667b

(Agreement ¶ 1.A.)

**E.  Notice**

The Agreement proposes the following procedure to notify class members of the Agreement. (Id. ¶ 6.A.) Within 10 days of the preliminary approval order, Defendant will provide via Microsoft Excel or similar format the names and last-known addresses of all class members. (Id.) Within 21 days of this Order, the Administrator will send notice via U.S. Mail the direct mail notice and claim form. (Id.) Before mailing, the Administrator will take reasonable measures to verify the last known addresses provided. (Id.) Any mail returned as undeliverable will re-mailed days to any available forwarding address. (Id.) If no forwarding address is available, the settlement administrator will perform a skip trace search and re-mail the notice. (Id.)

The Mail Notice includes the following: (1) information about the lawsuit; (2) a summary of the Agreement; (3) the class definition; (4) an estimate of average settlement share; (5) deadlines an procedures for opting-in, requesting exclusion, and objection; and (6) date and time of a final approval hearing. (See "Mail Notice," Agreement, Exhibit C.)

Class Counsel will also post a long-form notice, along with other pertinent case materials, on its website within 21 days of the preliminary approval order, where they will remain until the final void date of any settlement check issues. (Id. ¶ 6.B.) The Website Notice includes all of the information from the Mail Notice, along with more detailed explanations regarding: (1) the benefits of the settlement; (2) the procedures for requesting exclusion and objecting; (3) Class Counsel and Class Counsel's views of the settlement; and (4) the fairness hearing. ("Website Notice," Agreement, Exhibit D.)

Any opt-in or request for exclusion must be postmarked no later than 60 days after the preliminary approval order. (Agreement ¶¶ 7.A, 7.B, 7.E; see also Mail Notice, Website Notice.) To opt-in, a class member must submit a timely claim form and confirm that he or she signed an ignition interlock lease with Defendant during the applicable time period. (Agreement ¶ 7.A.) To be excluded, a class member must submit a timely written request to the Administrator with (a) the class member's full name, address, telephone number, and email and (b) a statement that the class member wishes to be excluded. (Id. ¶¶ 7.B, 7.C.)

Any objection must be filed with the Court within 60 days of the preliminary approval order. (Id. ¶ 7.F.) Both the Mail Notice and the Website Notice inform class member of their right to object to the Settlement. (Mail Notice; Website Notice.) An objection must (a) be filed with the Court; (b) include the objector's name, address, telephone number, and email address; (c) states the reasons for the objection; (d) indicate whether the objector intends to appear at the hearing; (e) attach documents demonstrating that the objector is a class member and any documents supporting the objection. (Agreement ¶ 7.F.) The Mail Notice does not include this information. (See Mail Notice.) And while the Website Notice includes information regarding

the contents of the objection, it does not include information on how to file the objection with the Court.

### V. PRELIMINARY APPROVAL OF THE SETTLEMENT

"[Rule 23] requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." Hanlon, 150 F.3d at 1026. To determine whether a settlement agreement meets these standards, the court considers a number of factors, including "the strength of the plaintiff's case, the risk, expense, complexity, and likely duration of further litigation, the risk of maintaining class action status throughout trial, the amount offered in settlement, the extent of discovery completed, and the stage of the proceedings, the experience and views of counsel, the presence of a governmental participant, and the reaction of the class members to the proposed settlement." Stanton, 327 F.3d at 959 (internal citations omitted). The settlement may not be a product of collusion among the negotiating parties. In re Mego Fin, Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000) (citing Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1290 (9th Cir. 1992)).

"At the preliminary approval stage, some of the factors cannot be fully assessed. Accordingly, a full fairness analysis is unnecessary." Litty v. Merrill Lynch & Co., 2015 WL 4698475, *8 (C.D. Cal. Apr. 27, 2015). Rather, the court need only decide whether the settlement is potentially fair, Acosta, 243 F.R.D. at 386, in light of the strong judicial policy in favor of settlement of class actions. Class Plaintiffs, 955 F.2d 1276. "[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." Hanlon, 15 F.3d at 1027.

### A. Extent of Discovery and Stage of the Proceedings

For a court to approve a proposed settlement, "[t]he parties must . . . have engaged in sufficient investigation of the facts to enable the court to intelligently make an appraisal of the settlement." Acosta, 243 F.R.D. at 396 (internal quotation marks omitted).

Plaintiff fails to address the extent of discovery, other than to briefly note that the parties "exchanged informal discovery concerning the class size and related potential damages." (Motion at 1.) Plaintiff provides no information about the type of information Defendant informally provided. Thus, it is unclear to the Court how rigorously Plaintiff's counsel investigated the claims. However, because Plaintiff claims that the lease agreement violates the law on its face, it is possible that only limited discovery was needed. But the Court cannot know that without an explanation from Plaintiff regarding what discovery would be needed and what was obtained.

//

### B. Amount Offered in Settlement

In determining whether the amount offered in settlement is fair, a court compares the settlement amount to the parties' estimates of the maximum amount of damages recoverable in a successful litigation. In re Mego, 213 F.3d at 459.

The total settlement amount is $130,000, and Plaintiff estimates that the average participating class member will recover between $29 and $55. (Motion at 14.) Plaintiff, however, fails to identify the maximum potential recovery. Instead, he states only that the settlement amount "equates to more than one-third of the class's maximum potential recovery." (Id. at 13.) Under the CLA, class damages are capped at either $1,000,000 or 1% of Defendant's net worth, whichever is the smaller amount. 15 U.S.C. § 1640 (a)(2)(B). Plaintiff therefore appears to insinuate that the greatest possible recovery is around $390,000 because Defendant's net worth is approximately $39 million. However, Plaintiff neither clearly states the maximum recovery nor submits any supporting evidence regarding Defendant's net worth. Without such evidence, the Court cannot accept that the maximum possible award is $390,000. This factor weighs against approval.

### C. Strength of Case and Risk, Expense, Complexity, and Likely Duration of Litigation

Plaintiff argues that, absent settlement, there are many procedural obstacles he would have to overcome to prevail: (1) defeating Defendant's pending motion to dismiss, (2) obtaining class certification, and (3) convincing the trier of fact of the merits of Plaintiff's claims. (Motion at 11–12.) Plaintiff also argues that it is not guaranteed that the class would receive the maximum statutory award. (Id.)

Plaintiff fails, however, to address any of Defendant's substantive defenses to its claims. Presumably, therefore, his case is strong. Moreover, while class action litigation is necessarily long and expensive, the Court notes that the claims at-issue in this case appear to be straightforward: either the common lease agreements violate the CLA or they do not. Therefore, the expense and likely duration of further litigation weigh in favor of preliminary approval while the strength of the case and complexity weigh against it.

### D. Experience and Views of Counsel

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 528 (C.D. Cal. 2004) (internal citation and quotation marks omitted). Class Counsel has experience serving as counsel in wage-and-hour class actions. (See Johnson Declaration ¶¶ 6–12.) Counsel further submits the Agreement is fair, reasonable, and a good outcome for the class. (See id. ¶ 17.) This weighs in favor of preliminary approval.

//
//

### E.  Collusion Between the Parties

"To determine whether there has been any collusion between the parties, courts must evaluate whether 'fees and relief provisions clearly suggest the possibility that class interests gave way to self interests,' thereby raising the possibility that the settlement agreement is the result of overt misconduct by the negotiators or improper incentives for certain class members at the expense of others." Litty, 2015 WL 4698475, at *10 (quoting Staton, 327 F.3d at 961).

Plaintiff fails to provide any information regarding the attorneys' fees in the Motion, stating only that Defendant will pay attorneys' fees "separate and apart" from the settlement amount. (See Motion.) But attorneys' fees are not separate and apart from the settlement—the amount Defendant must pay in attorneys' fees necessarily impacts what it is willing to pay to class members.

Defendants settling class actions generally have one goal: settling the greatest number of claims for the least amount of money. It is largely irrelevant to most defendants whether that total settlement goes into the pockets of the class members or into the pockets of the class counsel: "a defendant is interested only in disposing of the total claim asserted against it . . . the allocation between the class payment and the attorneys' fees is of little or no interest to the defense." Staton v. Boeing Co., 327 F.3d 938, 964 (9th Cir. 2003). This is true even where a defendant agrees to pay attorneys' fees "separate and apart" from the class settlement. "Private agreements to structure artificially separate fee and settlement arrangements should not enable parties to circumvent the 25% benchmark requirement on what is in economic reality a common fund situation." In re Bluetooth Headset Prod. Liab. Litig., 654 F.3d 935, 943 (9th Cir. 2011)(quoting In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig., 55 F.3d 768, 821 (3d Cir. 1995).) Here, the more Defendant agrees to pay class counsel, the less it is willing to pay to the class members. Because Defendant is presumably indifferent to the appropriation and Class Counsel has an interest in an appropriation that favors itself, the Court must ensure that Class Counsel is not enriching itself at the expense of unrepresented class members. Accordingly, the Court will analyze any fee request using the common fund approach.

Based on the Mail Notice and the Website Notice submitted, it appears that Defendant has agreed to pay Class Counsel up to $135,000—a figure that would MORE THAN the total settlement amount. (Website Notice at 4; Mail Notice.) Generally, courts find that a benchmark of 25% of the common fund is a reasonable fee award. Hanlon, 150 F.3d at 1029 ("This circuit has established 25% of the common fund as a benchmark award for attorney fees."); Paul, Johnson, Alston & Hunt v. Graulty, 866 F.3d 258, 272 (9th Cir. 1989) (the 25% benchmark can be adjusted in either direction "to account for any unusual circumstances[,]" but the justification for adjustment must be apparent). If $135,000 is the amount Plaintiff plans to seek, he provides no explanation for why such an unusually large fee award is justified. Nor does he provide any lodestar calculation in support of the large amount.

Undoubtedly, the parties have discussed a likely attorneys' fees figure: Defendant would not agree to pay attorneys' fees without a reliable estimate of those fees. Plaintiff's failure to

reveal that figure suggests he is shielding it from Court scrutiny. In the face of such a lack of transparency, the Court concludes that collusion of the parties at the expense of unrepresented class members is a strong possibility. Accordingly, preliminary approval of class settlement is not appropriate.

## VI.  CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's Motion for Preliminary Approval. The parties are free to move again for settlement approval with additional information regarding attorneys' fees. The Court cautions that absent demonstrated extraordinary circumstances, it is unlikely to approve a fee amount in excess of 30% of the total settlement amount.

**IT IS SO ORDERED.**